Argument not to exceed 15 minutes aside. Mr. Clay, you may proceed for the appellant. Good morning, Your Honors, and may it please the Court. Jesse Clay on behalf of Appellant Javontae White. I'd like to reserve three minutes for rebuttal. Fine. This is the rare case where insufficient evidence warrants reversal. In attempting to prove Section 841's death enhancement, the government failed to establish two essential elements. First, that Mr. White was part of a distribution chain that caused death, and second, that fentanyl was the cause of that death. I'd like to focus my argument this morning on the distribution chain. Three buckets of evidence prevent a rational juror from concluding beyond a reasonable doubt. That the fentanyl Ms. Christensen ingested on July 7th came from Mr. White. First, physical evidence shows that the substance White sold Blodgett on July 7th contained at least some part heroin. Second, circumstantial evidence shows the same. And third, regardless of composition, circumstantial evidence shows that the substance Blodgett sold Hall was a different substance entirely than what Mr. White sold Blodgett. Why wouldn't the field test be wrong? I mean, field tests are wrong all the time. And why wouldn't a jury be rationally able to trust the lab results? So, Your Honor, the government presented no Well, the lab results, I assume you're referring to Exhibit 20, are not in any way connected to this case. Or at least the government didn't put any evidence into the record to that effect. At most, what we have is Mr. Seedsome of the lab report, or the lab technician, excuse me, who prepared Exhibit 20, saying that there was a case number associated with that. But that case number appeared nowhere else in the record. In fact, ten other exhibits the trial to the lab coming in, the lab results? Because I don't remember that objection. There was no objection, Your Honor. But we're not raising a relevancy point or arguing that this exhibit was improperly admitted. Rather, what we're arguing is that a rational juror could not use that evidence to reach the conclusion that the government now, for the first time, attempts to show. For instance, at closing, the government didn't even argue about Exhibit 20 in the lab report. They didn't argue that it was evidence undermining the field test or otherwise showing that the controlled by substance that everyone agrees was the same substance sold on July 7th, somehow was fentanyl rather than heroin. But didn't they argue that the substance was fentanyl? So by inference, they're arguing based on that Exhibit 20? They did argue that that substance was fentanyl, Your Honor, yes. But with no evidence tying that exhibit to this case, there's precedent from this court, Your Honor, saying that juries can't pursue a web of inferences or engage in sheer speculation. And I think that is what a juror would have to do without any evidence otherwise tying Exhibit 20 to this case or the transactions at issue. If Exhibit 20 has nothing to do with the case, how is it in the record? I mean, I don't quite understand that. It's got to have something to do with the case. It's unclear what relevancy it would have, Your Honor. But as you are aware, I'm sure Rule 4.2 is a low bar. Mr. Blodgett's name was on it. For instance, it's unclear what substances he had on him at the time of arrest. Perhaps this was evidence of his prior use of fentanyl or other controlled substances. But I guess the point that we're trying to make here is that it's not evidence of what the substance was at the controlled by. And that is the key point. Well, getting back to Judge Sipar's point, I mean, the lab results are more accurate than the field results, are they not? That may be. But again, all the lab results show is that some substance tested positive for heroin. Mr. Sitsuma, the lab technician who prepared that exhibit, said he didn't know where these drugs came from when he prepared Exhibit 20. And the investigating officer's name on that report is Detective Wiersuma. And when he was on the stand, he testified that he didn't ever touch these controlled by drugs. That was Detective Cutright. You started out your argument that it's a rare case that we reverse on the basis of insufficiency of evidence. I mean, can you tell me the last time we did? I believe Ewing would be that case, Your Honor. How long ago was that? I believe three or four years. Okay. And it's because the standard of view is so high, whether any rational trier of fact could have found the evidence sufficient based upon reasonable inferences, right? Reasonable inferences, sure, Your Honor. But I think in, for instance, the United States, the SLEWO, this court held that jurors cannot pile inference upon inference and, again, cannot engage in sheer speculation. And that would be what is required here without any evidence or argument from the government that Exhibit 20 was somehow connected. Government doesn't have to have argument, does it? I mean, if the evidence supports the verdict or the decision of a rational juror, that can stand even if the government doesn't quite argue everything. Isn't that true? I mean, government doesn't have to argue everything as long as the evidence in the record presented to the jury is sufficient. Yes, Your Honor. But, again, I think the government has to make at least some suggestion tying Exhibit 20 to the jury. Why? If the evidence actually shows a causal connection, the government actually has to point that out to the jury? Otherwise, it's insufficient evidence? I don't quite understand that. It might be bad argument. It might be bad advocacy. But I don't think we would reverse a conviction if the evidence is sufficient but the arguments were inadequate. I suppose, I guess, Your Honor, there is no evidence to show that Exhibit 20 is correct. Sure. Sure. That's the better position, I think. So given this argument that you're making in front of us that was not made in front of the district court raises the question in my mind, if the defense had raised that argument, couldn't the government have corrected any omission of linking Exhibit 20 to the actual situation in this case? So, in other words, your failure or your client's defense lawyers at trial's failure to make this objection at trial prevents the government from redeeming itself? Well, I would say, first, Your Honor, below the defense did raise a Rule 29 objection arguing that, in part, that the drugs that Mr. White sold Mr. Blodgett were not the drugs that Blodgett sold Hall. So I would say that the defense did object to this point below. But more directly, Your Honor, it's the government's burden to make its case at trial. It's not the defense's obligation to highlight any missteps. But can the defense hypothetically hide an objection at trial to the adequacy of a piece of evidence? And then, if the defense loses and is convicted, then raise that as a sufficiency of the evidence point on appeal? Well, I don't think the defense can invite error, Your Honor, but, again, I don't think... I don't think the defense has any burden, Your Honor, to raise any objection. Raise objections at trial so they can raise them on appeal instead? Well, again, the objection we're raising on appeal, Your Honor, is the sufficiency of the evidence. We're not objecting to the admissibility of this evidence. We're simply arguing that a rational juror could not use it to conclusively make the point that the government is now trying to. And that is the death enhancement, and that's the same objection that we're renewing now. We're simply arguing that a rational juror would have to engage in sheer speculation, which this Court said it could not, when there's zero evidence in the record and zero argument by the government connecting Exhibit 20. And you made that argument in your Rule 29 motion? The Rule 29 motion was very succinct, Your Honor. In other words, you didn't? Correct. Not expressly. I mean, again, they did argue expressly that the drugs sold by Mr. White to Mr. Blodgett were not the same drugs that were sold from Mr. Blodgett to Mr. Hall, but they didn't argue this specific evidentiary. And that was based on the fact of conflicting testimony as to whether the drugs were in a baggie or in a folded piece of paper? In part, Your Honor. Yes, that was part of the argument below. Plus the field test that showed that there was heroin and the decedent did not have heroin in her. Correct? Correct, Your Honor. In her body, yes. As well as the fact that, again, the circumstantial evidence here, no one disputes, the government's facts section of its brief makes clear that all the communications for all the transactions in this case referred to heroin. There's only one reference to fentanyl, and that was a suggestion that maybe the drugs were laced with fentanyl. And when asked, Mr. Hall said he believed that other substance to be heroin. And so when you combine the physical evidence being the field test, the circumstantial evidence, all the communications, the evidence, and the fact that Mr. Hall, who conceded that he took these drugs at the exact same time, had an uneventful night and went to see a July 4th firework show, whereas obviously Mr. Hall and Ms. Christensen had a very severe reaction after allegedly taking the same substance. You add all these things together, and without any evidence from the government on the other side, a rational juror would have to do nothing but engage in sheer speculation to find that the drugs Mr. White sold contained nothing but fentanyl. So, may I ask Judge Morgan? Oh, sure. Going back just to Exhibit 20, so the tech, and I'm looking at his testimony, testified that that was fentanyl, right? Correct. The police, why wouldn't the chain of custody from the others establish enough evidence that it went from point A, Blodgett's sale to Hall, or the undercover, to the lab? They mark it, it goes to the lab, they establish that, and then they establish those same drugs are the ones that are tested. Why isn't that enough? That's how you always do it. The problem here, Your Honor, is that when asked, Detective Cutright, who submitted those drugs to the lab, they asked him, did this case, the controlled by, have a police report number? He said, it did. End of testimony. He didn't identify what that police report number was. If he identifies his signature on the bag and the date... He did not do that here, Your Honor. Those drugs were inadvertently destroyed, so the government did not have those drugs, or the bag, or the signature at trial. So there was no direct, or no evidence at all, linking the submission from Officer Cutright to the lab here in this case. That is one of the key failures in the government's case. I see I'm almost out of time. I will conclude with rebuttal. Great. Thank you. Good morning. May it please the Court. Joel Fausten on behalf of the United States. The Court should affirm Mr. White's conviction of distribution of fentanyl causing death. Not only was the evidence absolutely sufficient to show the distribution chain between Mr. White to Mr. Blodgett to Mr. Hall to the victim, in this case, that she was the one that ingested fentanyl, but there's also sufficient evidence to show that the fentanyl was not only independently sufficient to cause the death, but also the but-for cause of death. But I want to begin by addressing my adversary's focus on Exhibit 20. I dispute, the government disputes, that the evidence wasn't sufficient to link Exhibit 20 in this case for the following reason. During the direct testimony of Scott Sietsema, who was the lab chemist in this case, the government asked, what is Exhibit 20? He said, these are the lab results that I did for these cases. Then it was very clear that the lab results tested for fentanyl and only fentanyl. I think his point's different in kind, which is, regardless of what he says, you still have to establish the chain of custody that those are actually the drugs that your CI bought, or the undercover, I'm sorry, from Blodgett after the death, right? Because those are the drugs that are critical in this case. And the government did that, Your Honor. One thing that has not been addressed, either, I believe, in the briefing or in oral argument up to this point, is that this case was tried twice. The jury hung on Count 1 in September, I believe, of 2020, if I'm getting my dates correct. But they convicted on Counts 2 and 3. So it was established in Mr. White, by the time we tried this case a second time, that he had distributed that fentanyl. But you can't bring from the first trial into the second. You've got to have independent testimony. And the government's argument here, Your Honor, is that the evidence in this case, the testimony was sufficient. Because it was very clear, and it was not contested by the defense during the testimony of Scott Sietsema, the lab chemist that analyzed these substances, that Exhibit 20 was the test results for the fentanyl that was found on the side table inside the victim's apartment, that was the leftover fentanyl that she had taken the previous night, but also the fentanyl from the controlled buy. Notwithstanding that, the government's been... Did they not contest it in the Rule 29 motion? They did not, no. And notwithstanding that, for purposes of the posture of the case as it is right now, the government maintains that Mr. Hall and Mr. Blodgett's testimony was sufficient to show that distribution chain. Mr. Hall testified that, as to the events of July 7th, he called Mr. Blodgett because Mr. Blodgett was the individual that could get heroin on his behalf. They had met at the Kent County Jail. He knew he was a heroin user, and he could get some heroin from a suspect. Right, but their response is that those drugs field-tested for heroin and fentanyl, and only fentanyl, right, was found in her system. That is correct, Your Honor, but there was no dispute between Mr. Hall's testimony and Mr. Blodgett's testimony that Mr. Hall and Mr. Blodgett met at the Speedway gas station to go get drugs. They then proceeded to a particular section of Grand Rapids that was right outside of Mr. White's home, that Mr. Blodgett went to get the drugs, that he came immediately back, kept a portion of those drugs for himself as a finder's fee, because Mr. Blodgett was a gram-and-a-half-a-day user, exceptionally addicted to opioids at that point, and that he gave the remainder to Mr. Hall, who then went directly back to the apartment that he shared with the victim in this case, used the drugs, and his testimony was he used the drugs immediately when they got back to the apartment. He saw the victim use the drugs. They both passed out, and when he came to in the morning, she was dead. But how could Blodgett not have some ill effects if he's taking pure fentanyl? He, in fact, did testify during the trial, Your Honor, that he did have ill effects from the drugs that Mr. White was distributing. He testified, in fact, to a question of, how certain were you that these were the drugs that Mr. White had gave you, that you gave to Mr. Hall? And he said, absolutely certain. I even warned him that this suspected heroin that we were getting was unusually strong. He testified that he had to be Narcan'd on two separate occasions, and that's why he warned Mr. Hall about the possibility of drugs. But this time he wasn't treated, right? That's correct, Your Honor, and that's explained because he is a gram and a half user a day. Of what? Heroin? Of opioids, Your Honor. Your Honor, when... There's a big gram and a half of opioids? That's a lot of opioids. It is, and that was his testimony. He said that he began using heroin. There was also testimony in the record, Your Honor, that when drug users order heroin, they're often getting fentanyl. The government's drug trafficking expert, Special Agent Tom Burns... You're fentanyl as opposed to heroin laced with fentanyl? Correct. He says that in the market for heroin, fentanyl is taking over that space because it's a synthetic opioid that is cheaper and easier to produce and gives a greater high because it's 50 to 100 times more potent than a morphine molecule. And so there was evidence for the jury to conclude that even though Mr. Hall ordered heroin, which is what my adversary's argument rests on, that what in fact they got was fentanyl, and there was absolutely no physical evidence in the record that heroin was ever present in any of these substances. The white powder on the side table tested positive for fentanyl and only fentanyl. The white powder that Mr. Blodgett... How about the field test, though? I mean, we have to discount that, don't we? No. As Your Honors, and the jury was free to do that as well, because there was a lab test that came into evidence, and lab tests are always what these cases rest upon. The government doesn't bring tests based on field tests because special agents in the field aren't lab chemists. But that takes us back to Exhibit 20, right? If the defense had raised their Exhibit 20 argument the way they're raising it here at trial, what would you as the trial lawyer have done? Your Honor, we would have sought to admit into evidence the fact that Mr. White was already convicted of this charge and that it was conclusively proven by a jury beyond a reasonable doubt that he had distributed fentanyl to Mr. Blodgett. So the notion that this... Had this Exhibit 20 argument been raised in the first trial? No. So you basically would be relying on the fact that this arguably critical argument wasn't raised in the first trial, and therefore you could rely on the first trial? Well, the government's view of it in trying this case a second time was that the defense was effectively stopped from claiming that what Mr. Blodgett received that day on July 8th and gave to police officers as confirmation by was anything other than fentanyl. Had the defense raised that it was heroin, which they did not, was never even contested at this trial. And again, we had the testimony of Scott Seitzma who said, this is my lab report, this was the substances that I tested on this case without directly admittedly citing the actual police case report number. That's the only little minor thing that's missing. And getting back to my previous argument, Your Honors, even if the government hadn't approved the confirmation by in this case, the evidence was still sufficient for the jury to find beyond a reasonable doubt that the specific drugs that Mr. White sold on July 7th was ingested by the victim, Ms. Mamagona, and that it killed her. Because the electronic evidence presented in this case, which my adversary doesn't dispute at all here on appeal, is that it corroborated absolutely everything that Mr. White, or Mr. Hall and Mr. Blodgett were saying about that day and about that distribution chain. Their phones left digital breadcrumbs. Mr. Blodgett testified everything he did to during that day, including waking up because he was a raging alcoholic and getting booze to start his day, to going to lunch at a soup kitchen with the victim. From there, he met somebody who wanted to sell him Xanax, and so he put that person's number into his cell phone. Really what they're saying is, we don't contest any of that. We don't even contest White was selling drugs. We just contest that what White sold was fentanyl, and you can't prove the chain up because you're missing the connection from the deal itself to the lab. That's, in essence, their argument. No, because the actual lab report, again, Mr. Sietsema, the lab chemist testified that as to that remaining powder that was on the nightstand, that that was tested for this case. Not any other case. I get it, but you agree. The lab tech cannot set up chain of custody. You always have officers do that because the lab tech doesn't go to the scene, get the drugs, and take them to the lab. Go ahead. I'm sorry. I'm sorry, Your Honor. I didn't mean to cut you off. There was, in fact, evidence or testimony from the officers. We did have the crime scene technician who packaged up that white powder, testify. Her name escapes me right now, but I believe she was the second witness in the case. She said exactly what she did with that fentanyl, and none of this was ever contested. The issue is not preserved, is it? No. Chain of custody? Correct. It's not, Your Honor. There was no objection below. No. Chain of custody specifically wasn't even raised on this appeal. It was sort of diverted into that area. The whole argument that Mr. White hinges on right now is that Mr. Hall and Mr. Blodgett ordered heroin. Therefore, it must have been heroin. And there was testimony in this case to explain how that could not be true because of what's happening with the heroin market being overtaken by fentanyl and the things that are resulting from that. But the real problem is that the victim did not have any heroin in her body, right? Absolutely correct. And that's an important distinguishing point to the Ewing case, Your Honor. This court found in Ewing a decision it correct to reverse and find that there was insufficient evidence because there was an evidentiary gap. And the gap that existed in that case was there was undisputed testimony or evidence that a heroin-fentanyl mixture was distributed in that case. But that the decedent's toxicology had heroin metabolite in the urine, I believe, but it didn't have heroin in the blood. And  heroin in the blood signifies immediate past use. And because of that, the court said a rational jury couldn't conclude that they had ingested a heroin-fentanyl mixture because there was no trace of heroin in that person's blood. Here, by contrast, the government charged distribution of fentanyl causing death. There was no heroin in her blood. There was 10 nanograms per milliliter of heroin in her blood. That's three times higher than the therapeutic limit. And on top of that... There was some argument today that the victim, you know, died of fentanyl, but the boyfriend survived. And therefore, that fentanyl wasn't the cause of death or something like that. Does it matter that the boyfriend survived taking the same drugs? No, because there's no standard in the law that the government is aware of that requires the government to prove on a distribution causing death case that that tox level in the victim, in the case at bar, the government's required to somehow prove that that would kill everybody in the world. She could be more susceptible to the level of fentanyl than the boyfriend. He might have stronger tolerance to it or something like that. That is correct, Your Honor. And in fact, there was testimony in the case about that very thing. Mr. Hall, who was the boyfriend that used the fentanyl at issue with the victim in this case, testified that they had only used heroin. Heroin, again, I put it in air quotes, because what we're really talking about here is fentanyl once or twice before. And that led the forensic pathologist and the medical examiner in this case to conclude that she was opioid naive. And they provided testimony to the jury that when somebody's opioid naive, they don't have the tolerance to opioids that, say, a Mr. Blodgett might, who's been abusing opioids for years and is up to a gram and a half use a day. Mr. Blodgett himself even testified that when he first began using opioids, heroin, he was using only a tenth of a gram a day. And his addiction got so great that he was seeking drugs about every four hours. And he was not understanding the fact that he had to be Narcan'd on two prior occasions by drugs that were distributed by Mr. White. And so it's of no moment that Mr. White claims that I didn't know that I was distributing fentanyl. Because even in the Villars case, and that's part of this circuit's pattern jury instructions, it's not relevant for a person to know the specific controlled substance that they're distributing, only that they know that they're distributing a controlled substance. And I see that I'm out of time. Thank you. A few points to raise on rebuttal, Your Honors. First, to the extent that government is trying to rely on the first trial as somehow evidence of what the substance sold was, in the Supreme Court's Simpson v. Florida decision, they held that due process requires the government to prove each and every element of the case in a new trial. For instance, as the Ninth Circuit has said in Guerrero v. American-Hawaiian Steamship Co., quote, a new trial is not a reevaluation of the evidence introduced in the old trial. The new trial starts at scratch upon the pleadings, and there is no evidence yet in the case. So the first trial is wholly irrelevant to the issues here. Second, the government misstates the record about the effects on Mr. Blodgett of the substances on July 7th. The government just now argued that Mr. Blodgett had an adverse reaction. But as he testified at R-195, 2055, and 2081, he had no adverse reaction that night. The two instances where he had to be narcaned were prior transactions, not the history to that of Mr. Hall and Ms. Christensen. As the medical experts in this case testified, Mr. Hall had used heroin at least 12 other times, or excuse me, as he himself testified. And the medical expert testified in his autopsy report that Ms. Christensen had a history of heroin abuse. The only testimony in the record about disparities was with respect to experienced versus naive users, not someone who had used in the past and someone who had used slightly more. I also wanted to note that the lab tech he mentioned as having somehow established chain of custody, that was for the drugs that were found on the side table next to Ms. Christensen's body, not the controlled by substance. There's no evidence... Was there any objection in the trial court as to chain of custody? There was not, Your Honor, but the time for the government to argue that has passed. They've forfeited any argument about waiver or not raising the argument below. As this court held in United States v. Williams and United States v. Bartoli, like any other argument, the government may forfeit plain error review by failing to raise it. In its briefs, it did not raise this forfeiture issue, and now at oral argument it's trying to do that for the first time, and it's too late. Okay. Have you directly raised a chain of custody issue in your insufficiency argument? I believe we have, Your Honor, and I believe the Rule 29... You've done it maybe by inference or something, but I don't see that as a headline in your brief, that's all. I think we expressly note that the government did not tie Exhibit 20 to this case in our briefs, Your Honor. I think that's clear. And with that, I will conclude and ask the court please reverse the death conviction and remand for resentencing on all counts. Thank you. Thank you both for your argument, and Mr. Clay, I think I see that you are representing your client pursuant to the Criminal Justice Act, and we thank you for your service to your client and to the pursuit of justice. Thank you both. The case will be submitted.